IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BILLY JOE ANDREWS, WALTER STENSLAND, JOHN SCOTT, MARY SCOTT, MARK MILLER, JAMES C. STENSLAND, ALFRED MARSHALL, HOWARD MILLER, and JOHN DAVIS, | ) ) ) ) ) ) |
| | Case No. 2:11-cv-1074-MEF |
| | (WO—Publish) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MEDICAL EXCESS, LLC, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

The defendant, Medical Excess, LLC, removed this case to federal court from the

Circuit Court of Barbour County, Alabama. (*See* Doc. # 1.) In response, the plaintiffs

filed the Motion to Remand (Doc. # 5) now before the Court. For the reasons discussed

below, the plaintiffs' Motion to Remand is due to be GRANTED.

**II. BACKGROUND**[1]

Medical Excess, LLC, markets and sells excess health insurance coverage. (Doc. #

1-1 at ¶ 22.) In October of 2003, Medical Excess solicited business from Magnatrax, a

company located in Barbour County, Alabama, that employed the plaintiffs at the time.

---

[1] The Court has taken the facts from the complaint and accepts them as true for present purposes.

(*Id.* at ¶ 24.) At Medical Excess' request, Magnatrax required the plaintiffs, along with

its other employees, to provide to Medical Excess a bevy of personal and confidential

information so the employees could receive health insurance. (*Id.* at ¶ 25–26.) The

information Medical Excess gathered included the plaintiffs' names, social security

numbers, and dates of birth. (*Id.* at ¶ 25.)

In June of 2006, Medical Excess notified the plaintiffs and other Magnatrax

employees that someone had stolen the data collected in connection with their health

insurance applications. (*Id.* at ¶ 27.) Along with the notification, Medical Excess offered

some bare-bones advice about what the plaintiffs could do to protect themselves from

identity theft. (*Id.* at ¶ 29.) Medical Excess also alluded to some services that it would

provide to the plaintiffs if they noticed unusual activity on their financial statements and

suspected identity theft. (*Id.* at ¶ 30.) Medical Excess offered these services for only a

year. (*Id.*) The plaintiffs had no further correspondence with Medical Excess after this

point. (*Id.* at ¶ 31.)

In February of 2010, each plaintiff found out that someone had stolen his or her

identity from Medical Excess. (*Id.* at ¶ 32.) The thief had used the information to open

unapproved bank accounts, file falsified tax returns, receive unauthorized tax refunds, or

some combination of all three. (*Id.*) Medical Excess was then told about these events but

did nothing to offset the plaintiffs' losses. (*Id.* at ¶ 33.)

As a result, the plaintiffs filed a complaint in the Circuit Court of Barbour County,

Alabama, on November 11, 2011. In their complaint, they alleged various state law claims arising out of the alleged theft of confidential personal information. In Count One, each plaintiff claimed an alleged breach of fiduciary duty, asking for up to $74,999 in compensatory and punitive damages on that count. In Count Two, each plaintiff alleged negligence and wantonness, asking for up to $74,999 in compensatory damages. In Count Three, each plaintiff alleged negligent training, monitoring, and supervision on the part of Medical Excess, and, as with the other counts, sought damages of up to $74,999 per plaintiff.

Medical Excess removed the action to federal court, filing removal papers on December 16, 2011. (Doc. # 1.) The plaintiffs filed their remand motion less than a month later, submitting it on January 13, 2012. (Doc. # 5.) To decide the remand question, the Court is faced with a single issue: should the Court aggregate the $74,999 demands in each of the three counts in determining the amount in controversy?

### III. DISCUSSION

### A. The remand standard

Federal courts are courts of limited jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983). As a result, they only have the power to hear cases over which the Constitution or Congress has given them authority. *See Kokkonen*, 511 U.S. at 377.

Congress has empowered the federal courts to hear a case removed by a defendant from state to federal court if the plaintiff could have brought the claims in federal court originally. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). To accomplish a successful removal, the removing defendant bears the burden of showing that a district court has subject matter jurisdiction over the action. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (putting the burden of establishing federal jurisdiction on the defendant seeking removal to federal court). And although the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear, *see Burns*, 31 F.3d at 1095, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

### B. The removal statutes

The removal statute, 28 U.S.C. § 1441(a), allows a defendant to remove an action from state to federal court if the plaintiff could have originally brought his claim in federal court. Removing an action implicates federalism and comity concerns, however, because it requires a federal court to snatch the case out of state court. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). To ameliorate these concerns, federal courts construe the removal statutes narrowly, with all doubts resolved in favor of remand to state court. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

With this in mind, for this Court to exercise removal jurisdiction based on diversity, there must exist "complete diversity" between adverse parties—no plaintiff may share state citizenship with any of the defendants. *See Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir. 2002). In addition, the amount in controversy must exceed $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). When a plaintiff asks for a specific sum in the complaint, and that sum falls below $75,000, the defendant must prove to a legal certainty that the amount in controversy exceeds $75,000. *Burns*, 31 F.3d at 1095. And although multiple claims by one plaintiff can be aggregated in determining the amount in controversy, federal courts "do not aggregate the value of multiple plaintiffs' claims to satisfy the amount in controversy requirement." *Leonard v. Enterprise Rent-a-Car*, 279 F.3d 967, 974 (11th Cir. 2002) (citing *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 295 (1973)).

## C. Analysis

Should the plaintiffs' three counts be considered separate bases for liability? Or does each count merely represent a different theory for which the plaintiffs can recover on a single claim? In the eyes of Medical Excess, the plaintiffs have made three distinct claims for $74,999, which, when added together to get $224,997, easily satisfy the jurisdictional threshold. The plaintiffs view things differently, however, seeing the three counts as three different ways in which to recover the $74,999 in damages they allegedly

suffered as a result of Medical Excess mishandling their personal information.

In *Daniel v. Nationpoint*, No. 2:07-cv-640, 2007 WL 4533121 (M.D. Ala. Dec. 19, 2007), Judge Watkins faced a similar issue. There, the plaintiffs filed a complaint requesting compensatory and punitive damages not to exceed $74,999, asserting claims for fraudulent suppression, breach of contract, fraud, and negligence. When the defendant contested the plaintiffs' remand motion by claiming the various claims should be aggregated, Judge Watkins disagreed, holding that the defendants "failed to show that aggregation is proper." 2007 WL 4533121 at *2. He reasoned that, "[w]hile a plaintiff can sue for both a breach of contract and a tort arising out of a single transaction, the claims are not aggregated because the plaintiff can recover for either but not for both." *Id.* (citing *Combined Servs., Inc. v. Lynn Elecs. Corp.*, 888 F.2d 106, 107 n.4 (11th Cir. 1989)). He also relied on Alabama law, noting how "a plaintiff cannot receive a 'double recovery' for what is essentially one viable cause of action." *Id.* (quoting *Deupree v. Butner*, 522 So. 2d 242, 244–45 (Ala. 1988)). Significantly, however, the complaint in *Daniel* dealt with a complaint requesting only $50,000 in damages. Here, the plaintiffs have mentioned $74,999 in each count. This difference makes the case for aggregation relatively weaker here than in *Daniel*.

Yet in *Holmes v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 158 F. Supp. 2d 866 (N.D. Ill. 2001), a district court decided a case more analogous to the one at bar, and did so consistent with Judge Watkins's *Daniel* decision. The plaintiff's complaint in

*Holmes* sought damages for personal injury and contained two counts—one for

negligence, the other for strict liability. Each made reference to $50,000 in damages, just

like how in this case each of the plaintiffs' counts asks for $74,999. The *Holmes*

defendants argued that the plaintiffs asserted two distinct claims for $50,000, which,

when aggregated, exceeded the jurisdictional threshold. The district court disagreed,

holding that "Counts I and II of the plaintiff's complaint . . . state different legal theories

of recovery for the same injury, not separate claims for relief," meaning they could not

"be aggregated to meet the jurisdictional amount of § 1332(a)." 158 F. Supp. 2d at 868.

In reaching this result, the *Holmes* court explained the difference between a standalone

claim and a theory of recovery:

> Both claims rely on the same facts and allege a failure to
> warn; all that differs between the two claims are the
> allegations of the nature of the defendants' duties. *A right of*
> *recovery is distinct from a theory of liability*; a plaintiff may
> have only one right of recovery though she 'advances a
> variety of legal theories to support that recover.'

*Id.* (emphasis added) (quoting *Institutto Nacional De Comercializacion Agricola v.*

*Continental Ill. Nat'l Bank & Trust Co. of Chi.*, 576 F. Supp. 991, 1004 (N.D. Ill. 1983)).

Applying this reasoning, the *Holmes* court noted how "[t]he theories of negligence and

strict liability are 'merely different bases for a single recovery.'" *Id.* (quoting *Ind. Harbor*

*Belt R.R. Co. v. Am. Cyanamid Co.*, 860 F.2d 1441, 1445 (7th Cir. 1988)); *see also*

*Palmermo v. Fid. & Guar. Ins. Co.*, No. 1:08-cv-218, 2009 WL 88340, at *2 (D. Vt.

January 12, 2009) ("claims seeking the same damages under different theories may not

be aggregated.") Thus, the district court found aggregation inappropriate and held that the amount in controversy did not exceed the jurisdictional minimum.

In the case at hand, it is unclear whether the plaintiffs have asserted three different theories of recovery or three standalone claims. Neither party has cited Alabama case law allowing for or barring recovery for breach of a fiduciary duty, negligence, and negligent training when all three allegations arise out of the same underlying conduct. Medical Excess argues that, because the plaintiffs could receive different types of damages under each theory,[2] each count amounts to a separate claim for $74,999. The insurer also notes that the three theories allege three breaches at three different points in time,[3] which would arguably take this case outside the ambit of *Holmes*.

The Court finds Medical Excess's arguments unpersuasive. It is true enough that the plaintiffs allege they suffered damages as a result of separate acts or omissions by Medical Excess. But at the end of the day, the plaintiffs, like the plaintiffs in *Daniel* and *Holmes*, assert a claim for a single injury: they want compensation for the harms stemming from Medical Excess's failure to safeguard their private information. Medical Excess admits as much when it repeatedly refers to the "three theories" deployed by the

---

[2] For example, the plaintiffs can recover punitive damages under the breach of fiduciary theory but not under the negligence theory.

[3] Medical Excess states that the plaintiffs seek damages for three separate breaches that took place in three different points in time. The first deals with Medical Excess's breach from the date it collected the date until the theft in 2006. The second involves Medical Excess's response and offer of advice and protection services. And the third seeks damages for the unapproved bank accounts opened, and false tax returns filed, by the thief.

plaintiffs but fails to show that they amount to distinct claims under Alabama law. *Cf. Daniel*, 2007 WL 4533121 at *2 ("While a plaintiff can sue for both a breach of contract and a tort arising out of a single transaction, the claims are not aggregated because the plaintiff can recover for either but not for both."); *Holmes*, 158 F. Supp. 2d at 868 ("A right of recovery is distinct from a theory of liability"). In other words, from where Medical Excess's duty to protect the plaintiffs' data springs and when the insurer breached this duty is much less important—at least when it comes to determining the amount in controversy—than the harm suffered by the plaintiffs. Therefore, the Court will look at the value of the alleged harm in determining the amount in controversy. This makes more sense than woodenly adding the numbers recited in each count of the plaintiffs' complaint, as Medical Excess wants the Court to do, because it would lead to double counting if Alabama law does not allow a separate recovery under each theory.

Viewed in this light, it is not at all clear—let alone certain—that the value of the plaintiffs' claims exceed $75,000. Indeed, the harm at issue is the monetary damages suffered by the plaintiffs as a result of the data theft, combined with any attendant mental anguish, emotional distress, and punitive damages a jury may award. Given that none of the plaintiffs allege the specific amount of monetary damages (namely those stemming from the unauthorized bank accounts and false tax returns), and due to the inherently difficult-to-value nature of subjective and punitive damages, there is no reason to doubt the $74,999 figure claimed by each plaintiff. Accordingly, the Court finds that Medical

Excess cannot prove to a legal certainty that the claim asserted by the plaintiffs exceeds

$75,000, exclusive of interest and costs. The case is due to be remanded back to state

court.

The stipulations filed by the plaintiffs further buttress this conclusion. While well-

established law holds that federal courts look at the amount in controversy at the time of

removal, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010), and that

a plaintiff cannot deprive a court of subject-matter jurisdiction with a post-removal

stipulation, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938), courts

can still look at post-removal evidence to establish the facts at the time of removal,

*Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000). Here, the

plaintiffs' stipulations show that the plaintiffs seek $74,999 for a single harm, not

$74,999 for each of three separate harms. In fact, each plaintiff specifically says so: "I am

not seeking more than $74,999 in total damages for all counts and causes of action

combined in the complaint. I do not currently seek nor will I accept more than $74,999 in

damages in this case for all claims, even if a jury verdict exceeds that amount." (Doc. #

6-1.)[4] This supports the Court's conclusion that the plaintiffs assert one claim for

$74,999 under three different theories, not three separate claims for $74,999 apiece. The

plaintiffs should note that these stipulations preclude them from seeking or accepting any

---

[4] This document contains the affidavits of Billy Andrews (Doc. # 6-1 at 1); Walter Stensland (*id.* at 2); Alfred Marshall (*id.* at 3); John Davis (*id.* at 4); Howard Miller (*id.* at 5); Mary Scott (*id.* at 6); John Scott (*id.* at 7); Mark Miller (*id.* at 8); and James Stensland (*id.* at 9).

more than $74,999 once they return to state court. And if plaintiffs' counsel acts in a manner inconsistent with the affidavits they have submitted, adverse consequences can ensue. *See Burns*, 31 F.3d at 1095 (stating representation about damages submitted by lawyer has "important legal consequences" and thus "raise[s] significant ethical implications for a court officer"); *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 n.6 (11th Cir. 2003) (allowing Rule 11 proceedings for improper representations to the court even after case no longer pending).[5]

## IV. CONCLUSION

For the reasons discussed above, the plaintiffs' Motion to Remand (Doc. # 5) is GRANTED. The case is hereby REMANDED to the Circuit Court of Barbour County, Alabama, and the Clerk is DIRECTED to take appropriate steps to effect the remand.

Done this the 31st day of May, 2012.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE

---

[5] The state bar would presumably have an interest as well in hearing about improper representations used to evade a federal court's subject-matter jurisdiction.